UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                   )
FARBOD AMINI,                         )
                                                   )   No. C11-0974RSL
                      Plaintiff,       )
     v.                                       )
                                                   )   ORDER GRANTING IN PART
BANK OF AMERICA CORPORATION, )   DEFENDANTS' MOTION TO
*et al.*,                                     )   DISMISS
                                                   )
                     Defendants.    )
_____)

        This matter comes before the Court on "Defendants' Motion to Dismiss Plaintiff's First Amended Complaint." Dkt. # 23. Defendants Bank of America ("BoA") and LandSafe Appraisal Services, Inc. ("LandSafe") seek dismissal of all of plaintiff's claims under Fed. R. Civ. P. 12(b)(6). In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the allegations of the complaint are accepted as true and construed in the light most favorable to plaintiff. In re Syntex Corp. Sec. Litig., 95 F.3d 922, 925-26 (9th Cir. 1996); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). The question for the Court is whether the well-pled facts in the complaint sufficiently state a "plausible" ground for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim,

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS

dismissal is appropriate. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Having reviewed the papers submitted by the parties and heard the oral argument of counsel, the Court finds as follows:

## BACKGROUND[1]

In March 2005, third-party Kazem Noven, acting on plaintiff's behalf, borrowed money from Countrywide Bank, N.A., to purchase real property located at 97 Utsalady Road, Camano Island, WA. Countrywide had its subsidiary, defendant LandSafe, perform an appraisal of the real property to determine whether the property provided adequate collateral for the purchase loan. Although plaintiff never saw the appraisal, he knew that one had been obtained by Countrywide and correctly surmised that LandSafe had valued the property at or near the purchase price. Plaintiff relied on the appraised value when he authorized Mr. Noven to complete the purchase: he would not have gone through with the purchase had the appraisal revealed that the property was not worth the purchase price.

From the start, plaintiff made the payments on the loan. In December 2005, Mr. Noven transferred a one-half interest in the real property to plaintiff. In August 2006, plaintiff obtained a loan in his own name from Countrywide and acquired full title to the property from Mr. Noven. Because the real property was once again offered as collateral for the loan, Countrywide retained LandSafe to perform another appraisal. At the time of closing, plaintiff was aware that the appraised amount was at least sufficient to cover the value of his $504,000 loan plus a $30,000 line of credit he obtained from Countrywide. Plaintiff relied on this second appraisal when completing the August 2006 transactions.

On June 25, 2008, plaintiff received an invoice from a company he had hired to

---

[1] This statement of facts is based on plaintiff's complaint and the documents attached thereto. The Court declines defendants' invitation to take judicial notice of facts that are not in evidence regarding defendants' corporate structures and relationships.

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                -2-

pump out the septic system at 97 Utsalady Road. The invoice provided the first notice that the waste disposal system was not operable and had not been operable since before 2005. While investigating possible remedies for the waste disposal problems, plaintiff discovered that the foundation of the house had been compromised by the inoperable system. Plaintiff communicated frequently with Countrywide and its successor, BoA,[2] regarding the problems on the site and potential repair options. At the lender's request, plaintiff made a claim to his real property insurer concerning the septic tank and drainfield problems. The claim was rejected. With repair costs estimated in the hundreds of thousands of dollars and in the absence of insurance coverage, plaintiff determined that the real property was essentially worthless and stopped making payments on the August 2006 loan and line of credit.

Plaintiff requested copies of the 2005 and 2006 appraisal reports created by LandSafe. BoA or its agent refused to provide a copy of the 2005 appraisal, but sent a copy of the 2006 report on or about June 30, 2010. On April 8, 2010, the Island County Department of Public Health barred occupancy or use of the real property for any purpose until an approved waste disposal system is installed.

Starting in September 2010, plaintiff's attorney sent at least five requests for copies of certain documents and categories of documents to Bank of America Home Loans Servicing, LP.[3] BoA or its agent responded to the first letter, but declined to produce any documents because the signature on the request "did not appear to match the signature on the original loan documents." First Amended Complaint (Dkt. # 17), Ex. 2. Plaintiff's October 18,

---

[2] Countrywide merged with BoA on April 27, 2009, and plaintiff's promissory notes were assigned to BoA. "At that time, or thereafter, the servicing responsibilities for Mr. Amini's Promissory Note and line of credit obligation were assigned to BAC Home Loans Servicing, L.P." Dkt. # 17 at 7.

[3] Plaintiff alleges that the designated servicer of his loans was BAC Home Loans Servicing, LP. The Court assumes for purposes of this motion that that entity is the same as Bank of America Home Loans Servicing, LP.

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS            -3-

2010, request for documents noted (a) that an authorization was provided and that BoA had not clearly stated the ground for its objection, (b) that an authorization is not necessary when the author of the request identifies himself as an attorney acting on behalf of his client, and (c) that BoA's continuing failure to comply with the request for information may result in the initiation of a legal action for violation of the Real Estate Settlement Procedures Act. Plaintiff, through counsel, repeated its request for documents related to his loans. BoA or its agent again declined to comply, this time asserting that plaintiff had failed to provide a written authorization allowing BoA to release the loan information to the attorney. Plaintiff's attorney sent another letter detailing his and his client's efforts to obtain the requested documents over a two month period and reiterating the request. The request was again denied "because the signature of the borrower on your request did not appear to match the signature on the original loan documents." First Amended Complaint (Dkt. # 17), Ex. 6.

After plaintiff stopped making payments on his loans, BAC Home Loans Servicing took certain steps constituting "debt collection" under the Fair Debt Collection Practices Act in its attempt to obtain repayment of the loans.[4] BAC Home Loans Servicing called plaintiff on several occasions before 8:00 am or after 9:00 pm and frequently telephoned more than one time per day. Plaintiff and his attorney notified BAC Home Loans Servicing that plaintiff was represented and that all communications should go through counsel, but to no avail. On June 13, 2011, BoA notified plaintiff that the servicing responsibilities for plaintiff's loans would be transferred from BAC Home Loans Servicing to BoA. Plaintiff, through his attorney, informed BoA of the representational relationship. BoA nevertheless continues to contact plaintiff directly. At some point prior to July 2011, ownership of the promissory note related to the mortgage was transferred to Wells Fargo, while ownership of the promissory note related to the

---

[4] A similar allegation was leveled against defendant Home Retention Services, Inc., which made an offer of judgment on or about August 15, 2011. Plaintiff accepted the offer. Home Retention Services is therefore no longer participating in this case.

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                    -4-

line of credit was transferred to E*Trade Bank. BoA continues to act as the loan servicer for both loans.

**DISCUSSION**

**A. Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)**

RESPA requires lenders and loan servicers to timely respond to Qualified Written Requests ("QWRs") from borrowers. Within 5 days of receipt of a QWR from a borrower, a lender or servicer must provide written acknowledgment. 12 U.S.C. § 2605(e)(1)(A).[5] Within 30 days after receiving a QWR, the servicer must provide the borrower with a written response that includes the information requested by the borrower or an explanation of why the information is unavailable or cannot be obtained by the servicer. 12 U.S.C. § 2605(e)(2)(C). Plaintiff alleges that BoA violated RESPA when its agent and loan servicer, BAC Home Loans Servicing, refused to provide documents related to plaintiff's loans despite numerous QWRs. Plaintiff alleges that BoA is also liable under RESPA as the successor of BAC Home Loans Servicing. Defendants seek dismissal of this claim because (1) plaintiff's letters did not constitute QWRs as defined in the statute and (2) plaintiff has failed to allege actual damages.[6]

**1. Qualified Written Request**

For purposes of RESPA, a QWR is "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that --

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

---

[5] The Dodd Frank Act, Pub. L. 111-203, Title XIV, § 1400(c) and § 1463(b) (July 21, 2010), shortened the time periods in which the lender had to respond.

[6] In reply, defendants argue that BAC Home Loans Servicing did, in fact, comply with the requirements of RESPA. Dkt. # 26 at 3. While this argument is suspect given the complete lack of production on defendants' part, plaintiff did not have an opportunity to respond and the Court therefore declines to consider this argument.

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS         -5-

> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

12 U.S.C. § 2605(e)(1)(B). Although there is no indication that plaintiff believed there was an error in his account, he clearly identified documents and categories of documents (*i.e.*, "other information" in the parlance of § 2605(e)(1)(B)) that he sought from the servicer. Courts in this district disagree on whether a request for documents or information regarding the servicing of a loan constitutes a QWR in the absence of a claim of error. See Eifling v. Nat'l City Mortg., 2011 WL 892322 at *2-3 (W.D. Wash. Mar. 15, 2011) (a defaulted borrower's written inquiry regarding late fees and charges coupled with a request for 22 categories of documents is not the type of request RESPA was designed to cover); Moon v. GMA Mortg. Corp., 2009 WL 3185596 at *4 (W.D. Wash. Oct. 2, 2009) (a widow's written request for copies of "all the loan documents" is a QWR).

      The Eifling court was concerned that borrowers who had defaulted on their loans could "flood their lender with documentation requests, on the hope that a failure to timely comply will lead to an affirmative cause of action, or a defense to a collection or foreclosure action." Eifling, 2011 WL 892322 at *3. RESPA has built-in procedures and requirements that will, for the most part, forestall the feared flood. A request for documents must be specific and it must relate to the servicing of the loan.[7] Assuming a proper request is made, the lender's failure to appropriately respond does not provide a defense against foreclosure, but merely gives rise to a claim for actual damages (unless the violations amount to a pattern and practice, in which case statutory damages may be available). The upside of filing unnecessary QWRs is therefore rather

---

[7] "Servicing" is defined in the statute as "receiving any scheduled periodic payment from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS         -6-

limited. RESPA was enacted in large part because lenders and servicers were not responding to legitimate inquiries from their borrowers. The legislature specifically determined what was and was not a "qualified written request" that would trigger the lender's duty to respond. If the requirements established by Congress are met, the lender has a statutory duty to act: the courts should not second-guess the wisdom of the legislature's policy choice.

In this case, plaintiff's requests were not made on a payment coupon or other payment medium supplied by the lender or servicer. The letters provide plaintiff's name and loan number and request "copies of all Promissory Notes, security instruments, appraisal documents, payment records, and records of all communications," at least some of which relate to the servicing of plaintiff's loans. Because 12 U.S.C. § 2605(e)(1)(B)(ii) is written in the disjunctive, plaintiff was not required to state reasons why his account was in error. The provision of sufficient detail to the lender regarding the "other information" he sought satisfies the final requirement of QWRs for purposes of RESPA.

**2. Damages**

If plaintiff is able to prove that defendants failed to respond to his QWRs as required under RESPA, he would be entitled to recover:

"(A)  any actual damages to the borrower as a result of the failure; and

(B)  any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000."

12 U.S.C. § 2605(f)(1). Plaintiff alleges that defendants' failure to timely provide the requested documents caused him actual damages including, but not limited to, "the financial consequences of the delay of this action occasioned by such violations." First Amended Complaint (Dkt. # 17) at ¶ 17. In his response memorandum, plaintiff further explains his theory of damages. Plaintiff asserts that he filed this lawsuit to recover payments he made on the underlying loans and that defendants' failure to provide the requested documents delayed his ability to commence this

action. Dkt. # 25 at 12 n. 6. Thus, plaintiff's theory is that defendants' failure to timely provide the requested documents has delayed his recovery in this action and caused him to lose the use of his money for a longer period of time than would otherwise have been the case. This theory of actual damages is legally and factually insufficient. First, the claimed damages are not proximately caused by the alleged RESPA violation. If plaintiff were able to show that he is entitled to recover some or all of the payments he made on the loan, the recovery would be based solely on a negligence theory. There would be no causal link between the alleged RESPA violation and the hoped-for recovery. Any "delay" in the recovery would be the result of innumerable factors, most if not all of which have absolutely nothing to do with defendants' response to the document requests. Thus, plaintiff's alleged damages are too remote and speculative to give rise to legal causation. Second, plaintiff has not alleged any fact or document withheld by defendants that was necessary to the filing of this lawsuit. The only possible "smoking gun" was the 2006 appraisal report,[8] and plaintiff acknowledges that he received a copy of that two and a half months before he submitted his first QWR. Plaintiff ultimately filed this litigation without obtaining the requested documents.

In addition to his claim for actual damages, plaintiff seeks statutory damages, as the court may allow, for defendants' pattern or practice of noncompliance with the requirements of RESPA. Plaintiff alleges that he made five QWRs for documents and that defendants refused to comply with any of them, evidencing a pattern or practice of noncompliance. Plaintiff has adequately alleged the existence of QWRs, defendants' failure to comply with them, and damages cognizable under § 2605(f)(1)(B) of RESPA.

**B. Negligence**

Plaintiff alleges that LandSafe, acting as the agent of BoA's predecessor, did not

---

[8] Plaintiff has not alleged or provided evidence of any QWRs related to the loan obtained by Mr. Noven in 2005.

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                    -8-

exercise reasonable care in appraising the property located at 97 Utsalady Road, resulting in an appraisal that was not worth the paper on which it was written. Plaintiff asserts that LandSafe's inspection of the property, records review, and comparable analysis were all negligently performed, resulting in a gross overstatement of the property's value. Plaintiff alleges that, although he did not receive a copy of the appraisal, he knew it had been obtained and that it showed an appraised value at least commensurate with the amount of the loans offered by Countrywide. Plaintiff alleges that he acted in reliance on the information provided by LandSafe and would not have authorized either the 2005 or 2006 purchases had the property been accurately appraised.

Washington has adopted the Restatement (Second) of Torts § 552(1) with respect to the elements of a claim for negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

ESCA Corp. v. KPMG Peat Marwick, 135 Wn.2d 820, 826 (1998). Defendants argue that LandSafe did not owe a duty of reasonable care to plaintiff with regards to the 2005 appraisal, that plaintiff's allegations of reliance on the 2006 appraisal are not plausible, that the negligence claim is barred by the statute of limitations, and that BoA cannot be held liable for LandSafe's conduct.

**1. Existence of a Duty**

Defendants do not contest their potential liability to a third-party purchaser (such as Mr. Noven in 2005 and plaintiff in 2006), but argue that plaintiff, as an undisclosed financier of the 2005 transaction, is too remote to have a claim related to that appraisal. Whether a defendant owes a duty of care to the plaintiff is a question of law. Hansen v. Friend, 118 Wn.2d

476, 479 (1992). For purposes of a negligent misrepresentation claim, where the representation is made for the benefit and guidance of a person or a limited group of persons, the duty of reasonable care extends to any and all of them. Restatement (Second) of Torts § 552(2)(a). "[I]t is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied . . . . It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given." Restatement (Second) of Torts § 552 cmt. h.

LandSafe does not dispute that it knew that its report would be used by both the seller and the purchaser in the sale of 97 Utsalady Road. There is no indication, and one need not assume in the context of this motion, that LandSafe had any reason to believe that the purchaser was a single person, unencumbered by a spouse, partners, or investors, or that he was acting on his own behalf. In fact, plaintiff alleges that Countrywide, LandSafe's principal, was aware Mr. Noven was acting as plaintiff's agent at the time the appraisal was obtained. The Court finds that plaintiff was within the limited group of persons LandSafe intended to influence when it issued its report.

**2. Justifiable Reliance**

Defendants argue that plaintiff has failed to allege "facts that support the legal conclusion that he detrimentally relied on the 2006 appraisal." Dkt. # 23 at 10. The Court disagrees. Plaintiff's allegations are sufficient to state a plausible claim of reliance. At the time the appraisals were obtained, the market (and apparently the banking regulators) believed that lenders used these appraisals to safeguard their investments by making sure that the underlying real property provided sufficient collateral for the loan. Combined with this background, plaintiff alleges that he knew (a) that Countrywide had requested an appraisal, (b) that

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                -10-

Countrywide went forward with the transaction after obtaining the appraisal, and (c) that the appraised value was at least commensurate with the amount of the loans. Plaintiff also alleges that he relied on the value representation and would not have gone through with either transaction had the appraised value been less than the loan amount. While it is possible that discovery will reveal evidence that refutes these allegations, they are sufficient to survive a motion to dismiss.[9]

### 3. Statute of Limitations

A claim of negligent misrepresentation is subject to the discovery rule: the statute of limitations begins to run when plaintiff "discovered or, in the exercise of due diligence, should have discovered the misrepresentation." Sabey v. Howard Johnson & Co., 101 Wn. App. 575, 592-93 (2000). Plaintiff alleges that he first learned that LandSafe had significantly overstated the value of his house when he had the waste disposal system serviced in 2008 and discovered the septic and foundation problems. Defendants assert that plaintiff should have discovered LandSafe's negligence at the time of closing (particularly as it relates to the use of faulty comparables) or during the three years following the purchase. There is, however, no indication in the record that plaintiff had any reason to suspect that the appraisal was negligently conducted or that he was aware of, but ignored, signs of an impending problem with the waste disposal system prior to June 2008.

---

[9] Although not expressly argued by defendants, the Court has considered whether plaintiff's failure to obtain his own building inspection or otherwise take steps to protect his interests would bar this claim as a matter of law. Whether a party justifiably relied on a representation depends on the surrounding circumstances and is an issue of fact. ESCA Corp., 135 Wn.2d at 654-55. Although one could easily argue that plaintiff could have done more to evaluate the condition of the real property before purchasing it, a reasonable jury could conclude that plaintiff reasonably relied on an appraisal performed by a third-party and relied upon by the lender. Under Washington law, any negligence on plaintiff's part (short of the type of negligence that would make his reliance unreasonable) is reflected in an apportionment of damages, not an outright dismissal of the claim. See Lawyers Title Ins. Corp. v. Baik, 147 Wn.2d 536, 626-27 (2002) (rejecting contributory negligence bar to the justifiable reliance element).

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                -11-

Defendants argue that, had plaintiff accessed public records regarding other sales in the area, he could have discovered at or near the time of purchase that LandSafe's comparable analysis contained numerous errors. Defendants offer no support for the underlying proposition that a client has a duty to double-check the work and conclusions of a professional hired to provide services. Absent some reason to suspect that LandSafe had not done the job it was hired to do, plaintiff was not required to take upon himself the tasks he reasonably believed LandSafe had performed.[10]

With regards to the septic system, defendants argue that a reasonable property owner would have inspected the waste disposal system and, in this case, discovered its defects at some point before June 2008. Until oral argument, defendants had not identified a standard of care against which plaintiff's conduct could be measured, however, giving rise to an issue of fact regarding the reasonableness of plaintiff's actions or inactions. At oral argument, defendants for the first time cited Island County Code § 8.07D.280, which requires the owner of an on-site septic system to evaluate the system at least once every three years. Defendants argued that this ordinance required plaintiff to inspect his septic system no later than April 2008 and that he therefore "should have known" of the problems more than three years before this action was filed in June 2011. Arguments raised for the first time at oral argument are generally not considered because the opposing party is deprived of its opportunity to evaluate the merits of the

---

[10] Douglass v. Stanger, 101 Wn. App. 243, 254-57 (2000), on which defendants rely, arguably stands for the proposition that recording is the equivalent of actual notice to all persons. It appears, however, that imputation of constructive notice from a recorded document is appropriate "only if . . . ordinary prudence and business judgment required examination of the record." Aberdeen Fed. Sav. & Loan Ass'n v. Hanson, 58 Wn. App. 773, 777 (1996) (internal quotation marks omitted). As discussed in the text, there is no indication that plaintiff had any reason to suspect the adequacy or accuracy of LandSafe's comparable analysis or that plaintiff was otherwise on notice that further inquiry was necessary. Even if the Court were to assume for purposes of this motion that Washington law imposes an absolute duty on property owners to scour the public records periodically, there is no indication that the errors assigned to LandSafe (misstatements regarding sale prices, square footage, *etc.*) could have been discovered by reviewing the types of documents that are recorded in Island County.

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                -12-

new argument before responding. The efficacy of this policy has been borne out here. Following oral argument, plaintiff filed supplemental legal authority showing that Island County Code § 8.07D.280 was not enacted until July 16, 2007, less than one year before plaintiff evaluated his septic system. Thus, defendants have failed to show that plaintiff ran afoul of any applicable standard regarding the frequency with which a homeowner should conduct inspections or service a septic system.

For purposes of this motion to dismiss, the Court finds that the statute of limitations did not begin to run until June 2008 when plaintiff had a reason to suspect that LandSafe's appraisal was faulty and that further investigation was necessary.

### 4. BoA's Liability for LandSafe's Conduct

Plaintiff alleges that LandSafe, a subsidiary of Countrywide, was acting as Countrywide's agent when it performed the appraisals at issue, and that BoA is Countrywide's successor. BoA is apparently willing to concede that a principal can be held liable for its agent's wrongdoing and that a successor company may, depending on the mechanics of the transaction, acquire both the assets and liabilities of its predecessor. It argues, however, that plaintiff's bare allegations regarding agency and successor relationships "is hardly sufficient to establish [BoA's] liability." Dkt. # 23 at 12. That may be true, but proof of liability is not at issue in a motion to dismiss. Rather, the question is whether plaintiff's factual allegations give rise to a plausible claim for relief. Based on the relationships alleged in the complaint, plaintiff may be able to hold BoA liable for the negligence of its predecessor's agent.[11]

**C. Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.**

---

[11] To the extent defendants are arguing that the allegations of "agency" and "successor" are unsupported legal conclusions that should be ignored, the Court notes that these concepts contain both factual and legal elements, that plaintiff's allegation and its relevance to his claims are clear, and that defendants are well aware of their own corporate relationships. The Court declines to require additional factual allegations.

Plaintiff alleges that BAC Home Loans Servicing acted as a "debt collector" as that term is defined in the FDCPA and failed to comply with the requirements of the statute.[12] The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due to another to the extent such activity . . . (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person . . . ." 15 U.S.C. § 1692a(6)(F). It is undisputed that BoA's predecessor, Countrywide, originated the loan at issue. It is not clear from the allegations of the complaint whether the "originator" exception will apply to BAC Home Loans Servicing, however. The complaint is silent regarding the details of the April 27, 2009, merger between BoA and Countrywide or the transfer of servicing obligations to BAC Home Loans Servicing: neither the mechanics of the transfers nor their legal implications are apparent. Defendants have not argued that BAC Home Loans Servicing stepped into the shoes of Countrywide or otherwise inherited Countrywide's "originator" status. Thus, it does not appear that the (F)(ii) exclusion applies.

As for the "not in default" exclusion set forth in 15 U.S.C. § 1692a(6)(F)(iii), plaintiff alleges that BAC Home Loan Servicing obtained servicer status on or after April 27, 2009. One could reasonably infer from the allegations that plaintiff was in default on his loans as of that date. Drawing all inferences in favor of plaintiff, the Court cannot conclude that BAC Home Loan Servicing obtained the loans prior to plaintiff's default. See Chapel v. Mortgage Elec. Registration Sys., Inc., 2010 WL 4622526 at *5 (W.D. Wash. Nov. 2, 2010) (where allegations of complaint plausibly suggest that loan was assigned after default, motion to dismiss

---

[12] In its opposition, plaintiff also argues that BoA is liable for BAC Home Loans Servicing's conduct as a successor entity and that BoA is liable for its own conduct as a servicer after July 1, 2011. Plaintiff has not, however, alleged an FDCPA claim against BoA. Dkt. # 17 at 15-16 (alleging that BAC Home Loans Servicing and Home Retention Services, Inc., are "debt collectors"). Plaintiff cannot add a new claim in a memorandum.

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                -14-

FDCPA claim was denied).

### D. Washington's Collection Agency Act ("WCAA"), RCW Ch. 19.16

Plaintiff alleges that BoA is a "collection agency" as that term is defined in the WCAA and that its communications with plaintiff violated the act.[13] The facts alleged, however, lead to only one conclusion: BoA's attempts to collect on the loans were carried on in its own name and are directly related to its non-collection agency businesses, namely lending and servicing loans. As such, BoA is expressly excluded from the statutory definition of "collection agency." RCW 10.16.100(3)(c) ("collection agency" does not include "[a]ny person whose collection activities are carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency, such as but not limited to . . . . loan or finance companies; mortgage banks; and banks.").

Because plaintiff's WCAA claim fails as a matter of law, the derivative Washington Consumer Protection Act ("CPA") claim also fails.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claim for actual damages under RESPA related to the delay in filing this action and his WCAA and CPA claims are DISMISSED. Plaintiff's claim for statutory damages under RESPA, his negligence claim, and his FDCPA claim may proceed.

Dated this 7th day of February, 2012.

Robert S. Lasnik
United States District Judge

---

[13] In his opposition, plaintiff argues that BAC Home Loans Servicing is also a "collection agency" and that BoA was liable for its conduct as a successor. There are no supporting allegations in the complaint, however, and this potential claim has not been considered.