1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Hon. Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FARBOD AMINI, a single man,

                  Plaintiff,

    vs.

BANK OF AMERICA, N.A., a national
bank association; LANDSAFE APPRAISAL
SERVICES, INC., a corporation; and
HOME RETENTION SERVICES, INC., a
corporation,

                  Defendants.

NO. C11-0974 RSL

OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT

ORAL ARGUMENT REQUESTED

Because Plaintiff Farbod Amini is entitled to recover on his claim for negligent misrepresentation against Landsafe Appraisal Services, Inc. and its principal, Bank of America, N.A. ("BOA"), and on his claim that BOA is liable under the Fair Debt Collection Practices Act ("FDCPA"), the Court should deny defendants' motion for partial summary judgment in its entirety.

## I.  FACTS

As the Court recalls, this case arises from Farbod Amini's purchase of waterfront property on Camano Island. He purchased the property in 2005 through his agent and

OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 1
(NO. C11-0974 RSL)

stakeholder, Kazem Noven, in 2005. The purchase prince was $525,000, and Countrywide Bank provided the loan for the purchase. Declaration of Guy W. Beckett for Opposition to Motion for Partial Summary Judgment ("Beckett Decl."), Ex.'s 3-5.

Countrywide was aware that Mr. Amini was the intended owner of the property even though the purchase was being made in Mr. Noven's name. Declaration of Farbod Amini for Opposition to Motion for Partial Summary Judgment ("Amini Decl.") at 2. In fact, it was Countrywide that suggested the purchase be structured that way. *Id.* After Mr. Amini made the payments for a year after the 2005 transaction, he was able to get a refinance loan in his own name. Amini Decl. at 2-3.  Mr. Noven transferred title so Mr. Amini could hold the title 100% in his name, and Mr. Amini obtained a refinance loan from Countrywide in August 2006 for a total of $534,000. *Id.* at 3.

Countrywide used its associated corporation, LandSafe Appraisal Services, Inc., to appraise the property for both the 2005 and 2006 loan transactions. The value stated in the 2005 appraisal was $525,000, and the value stated in the 2006 appraisal was $ 630,000. Declaration of George Nogatch ("Nogatch Decl."), Ex.'s 2, 4.

On June 25, 2008, Mr. Amini learned that the septic system for his property was not functioning properly.  Amini Decl. at 3, Ex.'s A-C. Mr. Amini thereafter investigated the extent of the problem and learned that a new septic system could not be installed on the waterfront parcel. *Id.* at 3-7.  His septic system could not be repaired, and his property would be unusable, until he ran a line for wastewater treatment and disposal to another property that could support a drainfield, *Id.* Mr. Amini, who has been a contractor licensed and registered in Washington state, has paid for some of the preliminary work to do this work, has obtained bids to do the work, and has estimated the total cost required to resolve the problems with the



1   septic system and the associated problems with the house's foundation. *Id.* The total cost to

2   repair the problem will exceed $600,000. *Id.* at 6-7.

3       When he discovered his property was essentially worthless and that BOA would not

4   pay for the necessary repairs, Mr. Amini stopped making payments on the 2006 promissory

5   notes. Defendants' Motion for Partial Summary Judgment (Dkt. #78-1) at 3. Following his

6   decision to stop making payments on the notes, the loan servicers, BAC Home Loans

7   Servicing, LP and its successor, BOA, communicated repeatedly with Mr. Amini directly

8   attempting to collect on the notes, even though they knew he was represented by an attorney

9

10  with respect to the debts. Declaration of Farbod Amini in Support of Motion for Partial

11  Summary Judgment (Dkt. #72) at 2-3; Declaration of Guy W. Beckett in Support of Motion

12  for Partial Summary Judgment (Dkt. #71) at 2-4 and Ex.'s A-I, L-M.

13      Mr. Amini filed this action to recover against LandSafe and the successor to its

14  principal, BOA, on June 10, 2011. Complaint (Dkt. #1).

15

16  ## II.    LEGAL AUTHORITY AND DISCUSSION

17  **A.    Mr. Amini is entitled to recover on his negligent misrepresentation claim.**

18      In *Schaaf v. Highfield,* 127 Wn.2d  17, 896 P.2d 665 (1995), the Washington

19  Supreme Court recognized that an appraiser providing an appraisal for a lender in a real

20  estate transaction may be liable to the loan customer for negligent misrepresentation. The

21  duty of care owed by an appraiser for a lender in a transaction like the ones at issue in this

22  case extends to all of "those involved in the transaction that triggered the appraisal report,

23  including the buyer and seller." *Id.* at 27. Thus, in *Schaaf* the Court confirmed that an

24

25  appraiser hired by the Veterans Administration ("VA") owed a duty of care to the purchaser

26



1  of the property being appraised, whose loan for the purchase was being guaranteed by the

2  VA.

3      In 2005 LandSafe knew there was a purchaser and borrower entitled to rely on its

4  appraisal.[1] In 2006, it knew there was a borrower entitled to rely on its appraisal.[2] Thus,

5  LandSafe owed a duty of care to Mr. Amini for both the 2005 and 2006 appraisals, and is

6  liable to him for its negligent misrepresentations. As BOA is the successor to LandSafe's

7  principal, BOA is liable for LandSafe's tortious conduct. *Finney v. Farmers Ins. Co.,* 92

8
9  Wn.2d 748, 754, 600 P.2d 1272 (1979) (principal is jointly and severally liable for

10  negligence of its agent); *Payne v. Saberhagen Holdings, Inc.,* 147 Wn. App. 17, 26, 190 P.3d

11  102 (2008) (citations omitted) (surviving company after merger is responsible for merged

12  company's liabilities).

13      In *Schaaf,* the Supreme Court adopted the factors stated in the Restatement (Second)

14  of Torts § 552 (1977) for determining whether an appraiser is liable for a negligent appraisal.

15  *Id.* at 23. The Restatement provides,

16
17          (1) One who, in the course of his business, profession or
            employment, or in any other transaction in which he has a pecuniary
18          interest, supplies false information for the guidance of others in their
            business transactions, is subject to liability for pecuniary loss caused to
19          them by their justifiable reliance upon the information, if he fails to
            exercise reasonable care or competence in obtaining or communicating
20          the information.

21
22          (2) Except as stated in Subsection (3), the liability stated in
            Subsection (1) is limited to loss suffered
23          (a) by the person or one of a limited group of persons for whose
            benefit and guidance he intends to supply the information or knows that
24          the recipient intends to supply it; and

25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
        [1] The 2005 appraisal (attached as Exhibit 4 to the Declaration of George Nogatch) states that
26      [2] The 2006 appraisal states that it was for a "refinance."  Declaration of George Nogatch, Ex.
    2 at 1.

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

1

2          (b) through reliance upon it in a transaction that he intends the
          information to influence or knows that the recipient so intends or in a
3          substantially similar transaction.

4    *Id.* at 22 (quoting Restatement (Second) of Torts § 552 (1977)).

5          The defendants argue that they are not liable for negligent misrepresentation for four

6    reasons: (1) LandSafe did not breach a duty to Mr. Amini because it was not its obligation to

7    discover the problems with the septic system or foundation at the property; (2) Mr. Amini did

8    not rely on LandSafe's 2006 appraisal; (3) Mr. Amini suffered no damages due to the

9    negligently performed appraisals; and (4) Mr. Amini's negligence claim is untimely. Each of

10   these asserted bases for dismissal is without merit.

11
          **1.      LandSafe breached a duty owed to Mr. Amini to provide accurate and
12                   reliable appraisals.**

13         Mr. Amini agrees that there is no evidence that it was the appraiser's obligation to

14   discover that the septic system was not functional at the time of the appraisals, or that the

15   foundation was in need of expensive repairs. That, however, does not end the inquiry and it is

16   not the end of the story.

17
           The crux of a negligent misrepresentation claim is the conveying of and reliance on
18
     false information. *Borish v. Russell*, 155 Wn. App. 892, 905, 230 P.3d (2010). Thus,
19
     LandSafe appraisers had the obligation to provide accurate information for Mr. Amini's
20
     guidance for the 2005 and 2006 transactions. *Schaaf, id.* at 22 (quoting Restatement (Second)
21
     of Torts § 552 (1977)). It is clear, from reviewing the testimony of Mr. Amini's expert
22
     appraiser, George Nogatch, that LandSafes' appraisers utterly failed to fulfill that obligation.
23
     Declaration of George Nogatch ("Nogatch Decl.") at 2-3 and Ex.'s 3, 5. It is Mr. Nogatch's
24

25

26

OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 5
(NO. C11-0974 RSL)



1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

1   opinion that the appraisals were inaccurate, were completely unreliable and could not be

2   considered to be any accurate estimation of value. *Id.*

3       The defendants in their motion do not argue that LandSafe's appraisals in 2005 and

4   2006 were accurate. Indeed, defendants' appraisal expert, Richard Hagar, analyzed both the

5   2005 and the 2006 appraisals and found them to be improperly performed. With respect to

6   the 2005 appraisal, Mr. Hagar noted several errors, opined that the "appraisal has numerous

7   factual and analytical failures that result[] in numerous violations of the Uniform Standards

8   of Professional Appraisal Practice," concluded that the report was not appropriate or was not

9   communicated in a manner that was not misleading, and concluded that the opinion of value

10  stated in the appraisal was not adequately supported by the analysis, opinions, and

11  conclusions stated in it. Beckett Decl., Ex. 1 at 1-3 (BANA Doc. #'s 257-259). Mr. Hagar

12  noted several problems with the appraisal's use of the chosen comparable sales, all of which

13  did or may have inflated the property's value in the appraisal. *Id.* at 3 (BANA #259).

14

15

16      With respect to the 2006 appraisal, again, Mr. Hagar noted several errors. Again, Mr.

17  Hagar opined that the appraisal contains "numerous factual and analytical failures that

18  result[] in an appraisal that is misleading." Beckett Decl., Ex. 2 at 2 (BANA #290). He again

19  noted that the appraisal contained numerous violations of the Uniform Standards of

20  Professional Appraisal Practice. *Id.* He again opined that the report was not appropriate or

21  communicated in a manner that was not misleading, and noted "Numerous 'facts' are in error

22  while others are masked or missing combined with the failure to properly describe the

23  subject," resulting in an appraisal that is "misleading." *Id.* And again, Mr. Hagar opined that

24  the opinion of value stated in the appraisal was not adequately supported by the analysis,

25  opinions and conclusions stated in it, and that "Errors, adjustments and selection of sales

26

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

appears biased toward a certain value conclusion." *Id.* Finally, Mr. Hagar again noted several problems with the sales comparables used that resulted in the improper inflation of the property's value. *Id.* at 3-4 (BANA #'s 291-292).

There is no dispute about whether the 2005 and 2006 were properly prepared and whether they were accurate. To both issues, they were not. Thus, LandSafe breached the obligation to provide Mr. Amini accurate appraisals, for which Mr. Amini is entitled to recover.

**2.    Mr. Amini justifiably relied on the LandSafe appraisals.**

Whether a plaintiff justifiably relied on a representation or a misrepresentation is almost always a question of fact for the jury. *In re Daley's Dump Truck Services, Inc.,* 108 F.3d 213, 215 (9th Cir. 1997) (citing *Schaaf,* 127 Wn.2d at 30). Here, Mr. Amini has testified he relied on the values stated in the appraisals, which were false values. Amini Decl. at 8. He would not have completed the transactions had he any idea that the values asserted in the appraisals were false and unreliable. *Id.* Therefore, the jury is entitled to determine whether Mr. Amini relied on the appraisals, and whether that reliance was justified.

The defendants argue that Mr. Amini couldn't have relied on the appraisals because he did not review them until several years after the transactions. That is not a valid argument; Mr. Amini was not relying on the printed words on the pages of the appraisals, but on the values asserted in them. He knew that the values stated in the appraisals supported Countrywide's agreement to make the loans; if they had not, Countrywide wouldn't have made the loans. And Countrywide's representatives told Mr. Amini that the values stated in the appraisals supported the loan amounts. Amini Decl. at 2, 8.



1    In *Borish v. Russell,* 155 Wn. App. 892, 230 P.3d (2010), the defendants made a

2   similar argument, which Division Two of Washington's Court of Appeals rejected. In that

3   case, a purchaser of a home sued the the lender's appraiser for negligent misrepresentation.

4   The purchasers alleged that the home was a manufactured home, that it was represented to be

5   a "stick built" home, and that the appraisal indicated it was not a manufactured home. The

6   purchasers obtained evidence after they closed on the sale that the home was, in fact, a highly

7   modified manufactured home. The appraiser moved for summary judgment, arguing that her

8   appraisal could not be used as a construction warranty. The plaintiffs argued that they didn't

9   consider the appraisal to be a warranty of the construction, but that they based their decision

10  to purchase on the value stated in the appraisal. The value would have been less had it been

11  appraised as a manufactured home.

12  
13      The trial court granted the appraiser's motion for summary judgment to dismiss the

14  purchasers' negligent misrepresentation claim, but the Court of Appeals reversed that order:

15  
16      Additionally, Russell argues that the Borishes failed to provide evidence
        that they reasonably relied on false information that proximately caused
17      them damages. Specifically, Russell asserts that the Borishes utilized
        her appraisal as a warranty of the residence's construction and that she
18      expressly disclaimed this use. But the Borishes' relied on the appraisal
        for the *value* of the property listed in the appraisal, not as a construction
19      warranty. The Borishes retained a contract rescission right that they
        could exercise only if the appraised value was for less than the purchase
20      price. Russell had a copy of the RESPA making her aware of the
        Borishes' contract rights related to her appraisal. Russell valued the
21      home at $682,318.00—which is only $2,318.00 more than the Borishes'
        purchase price. But the appraisal is based on the belief that the Olsons'
22      home is not a manufactured home. Had Russell believed the home to be
        manufactured, her appraisal value almost certainly would have dropped
23      below the purchase price of $680,000.00, thus allowing the Borishes the
        option of rescinding the contract. The Borishes' alleged damages were
24      based on their loss of the ability to exercise their contract rescission
        rights. The Borishes presented evidence of their reliance and possible
25      damages sufficient to survive summary judgment. A jury must
26

1

determine the reasonableness of their reliance and what damages, if any,
were proximately caused by the loss of the right to rescind the contract.

2

3

*Id.* at 906 (emphasis in original).

4

Similarly, in *Stotlar v. Hester,* 582 P.2d 403, 92 N.M. 26 (1978), in a purchaser's

5

lawsuit against the seller's appraiser for negligent misrepresentation, the appraiser included

6

an incorrect square footage amount in his appraisal, which skewed the value higher than it

7

would have been had the square footage amount been properly stated. The purchasers were

8

not provided a copy of the appraisal report before they completed their purchase. Instead,

9

they relied on the assertion of the value stated in the appraisal. The appraiser moved for

10

summary judgment on the basis that the purchasers never saw the appraisal until after the

11

sale was completed, and the trial court granted the motion, dismissing the purchasers' claims.

12

The New Mexico Court of Appeals, however, reversed the dismissal order, concluding that

13

the purchasers did not need to see the appraisal to rely on it:

14

15
16
17
18

What plaintiffs relied on was Hester's appraisal as to the value of the
property. An erroneous square footage figure is of consequence if this
error contributed to an erroneous valuation. Hester made no showing
that the alleged error in square footage did not result in an erroneous
valuation. Thus, summary judgment was improper as to the damage
claim based on an erroneous square footage.

19

*Id.* at 408.

20

Similar to the rulings in *Borish* and *Stotlar,* the fact that Mr. Amini did not see the

21
22

appraisals prior to the transactions is irrelevant to the analysis of whether he relied on them.

23

That Mr. Amini relied on the values asserted in the appraisals for determining whether to

24

complete the transactions is undisputed. He is entitled to present his claims to the jury.

25

*Schaaf* does not compel a contrary result. In *Schaaf,* the Supreme Court concluded

26

that the purchaser could not show he justifiably relied on the appraisal because (1) the issue

OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 9
(NO. C11-0974 RSL)



1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

in the case was how much less the value of the house would be than as stated in the appraisal, due to the fact that the house needed a new roof, but the purchaser knew that it needed a new roof before he purchased it and in fact based his purchase offer in part on how much it would cost to repair the roof, and (2) the purchaser did not see the appraisal report until after the sale concluded. Here, unlike in *Schaaf* where the purchaser knew of the problem before the closing, there is no evidence that Mr. Amini had any notice whatsoever until 2008 that there was a problem with the septic system at the property. Also, in *Schaaf,* unlike in *Borish, Stotlar,* and here, there was no evidence that the purchaser based his decision to purchase the property in any part on the value of the house represented in the appraisal. On the issue of Mr. Amini's justifiable reliance, *Schaaf* does not support defendants' argument.

Finally, the defendants argue that Mr. Amini's claim of reliance on the appraisals is belied by the existence of another appraisal for $670,000. Without any evidence supporting this premise, the defendants contend that either Mr. Amini or another loan broker from whom he was attempting to obtain a loan procured the appraisal. Mr. Amini denies these speculative contentions and denies that he knew about the other appraisal.  Amini Decl. at 7. Even if the defendants had evidence that Mr. Amini had something to do with the appraisal and/or knew about it before he completed the August 2006 loan transaction – which they don't – at best, it would create an issue of disputed fact that would need to be sorted out by the jury. Defendants' speculative contention concerning the other appraisal is not a legitimate basis for the entry of an order dismissing Mr. Amini's negligent misrepresentation claim.

**3.    Mr. Amini suffered recoverable damages proximately caused by the negligently performed appraisals.**



1    The defendants also argue that because the values of the property at the time of the

2    relevant transactions exceeded the amounts of Mr. Amini's loans for the transactions, Mr.

3    Amini suffered no recoverable damages. The defendants' argument is based on a faulty

4    premise: i.e., that the correct values of the property exceeded the loan amounts. In addition,

5    even if it is true, Mr. Amini is still entitled to recover his money damages because he was

6    relying on the accuracy of the appraisals when completing the transactions. Had he known

7    the appraisals were not accurate, he would not have completed the transactions. Amini Decl.

8    at 8.

9

10    As the defendants properly note, the Restatement (Second) of Torts § 552B governs

11    what damages are recoverable. A plaintiff who has been the victim of an appraiser's

12    negligent misrepresentation is entitled to obtain "the difference between the value of what he

13    has received in the transaction and its purchase price or other value given for it; and

14    pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the

15    misrepresentation." *See* Motion for Partial Summary Judgment at 11.

16

17    There is no dispute that the values stated in both appraisals were false. Mr. Amini

18    relied on the false information in determining whether to go forward with the 2005 and 2006

19    transactions. Therefore, he is entitled to recover the difference between the value he received

20    in the transaction and its purchase price or other value given for it, and the pecuniary loss

21    suffered otherwise as a consequence of his reliance on the misrepresentations. Restatement

22    (Second) of Torts § 552B.

23

24    Although it was not the LandSafe appraisers' duty to discover the problems with the

25    septic system and foundation, those problems affected the actual value of the property that

26    Mr. Amini received. Because of the expenses required to repair the septic system and

OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 11
(NO. C11-0974 RSL)



1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

foundation problems with the property existing at the time of the transactions, the actual

value of what Mr. Amini received in the transactions was $0.  Declaration of George

Nogatch at 3-4.[3] Under the analysis of Section 552B of the Restatement (Second) of Torts,

Mr. Amini is entitled to recover the difference between the amounts of the loans -- $ 525,000

for the 2005 transaction and $ 534,000 for the 2006 transaction,[4] plus any portion of

payments to Countrywide or BOA he made that were applied to interest or other fees -- any

amounts other than the amounts applied to principal reduction -- and plus any other expenses

he incurred related to the loans, including closing costs and loan fees.  In practical

application, the damages Mr. Amini will be entitled to obtain are, at a minimum, the total of

all of his payments on the loans, plus any additional expenses he incurred and paid related to

the 2006 loan transaction, such as loan fees and escrow fees.

### 4.     Mr. Amini timely filed his Complaint.

As they did in their prior motion to dismiss, the defendants also argue that Mr.

Amini's negligent misrepresentation claims should be dismissed because the lawsuit was not

---

[3] Richard Hagar's opinion in his declaration (Dkt. #75) that the property had a value of $600,000 as of the date of the 2006 loan is not credible. First and most important, his opinion does not take into account the extraordinary cost of repairs necessary to fix the problems with the septic system and foundation. It does not take into account that the property cannot be used until those expenses are incurred and those problems resolved. And, as noted by Mr. Nogatch in his declaration, Mr. Hagar makes several other errors in his report that result in an overstatement of the value of the property. Nogatch Decl. at 4-6.

[4] The comments to Restatement (Second) of Torts § 549 apply in determining the recoverable damages for a negligent misrepresentation.  Restatement (Second) of Torts § 552, cmt. a. According to § 549, cmt. c,

> In a sales or exchange transaction the loss for which the recipient of a
> fraudulent misrepresentation is entitled to recover is usually the difference
> between the price paid or the value of the thing given in exchange and the
> value of the thing acquired. The value of the article is normally determined by
> the price at which it could be resold in an open market or by private sale if its
> quality or other characteristics that affect its value were known.

OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 12
(NO. C11-0974 RSL)



Berry&Beckett
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

timely filed. However, as Mr. Amini noted in his opposition to the motion to dismiss, the discovery rule applies to negligent misrepresentation claims, and determining when a plaintiff discovered or should have discovered the basis for his negligent misrepresentation claim is a question of fact for the jury. *First Maryland Leasecorp v. Rothstein,* 72 Wn. App. 278, 286, 864 P.2d 17 (1993) (discovery rule applies to determine when negligent misrepresentation claim accrues); *Winbun v. More,* 143 Wn.2d 206, 213, 18 P.3d 576 (2001) (when plaintiff discovered or should have discovered basis for a cause of action is a question of fact for the jury).  There is no evidence that prior to June 25, 2008, Mr. Amini had any reason to suspect that LandSafe's appraisals were faulty and that further investigation was necessary.  *Cf.* Order Granting in Part Defendants' Motion to Dismiss (Dkt. #30) at 11 ("There is … no indication in the record that plaintiff had any reason to suspect that the appraisal was negligently conducted or that he was aware of, but ignored, signs of an impending problem with the waste disposal system prior to June 2008."); 13 ("For purposes of this motion, the Court finds that the statute of limitations did not begin to run until June 2008 when plaintiff had a reason to suspect that LandSafe's appraisal was faulty and that further investigation was necessary.").

Mr. Amini had no reason prior to suspect there was anything wrong with his septic system until June 25, 2008, when he received the notice from the contractor he had retained to pump the tank that the tank was in "poor condition" and that the drainfield was "shot." Amini Decl. at 3 and Ex.'s A-C. This action was filed on June 10, 2011, prior to the expiration of three years from the date of Mr. Amini's first discovery of the problems with the septic system. RCW 4.16.080(2) (statute of limitations for negligent misrepresentation claim is three years from date plaintiff "discovers" his claim).

OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 13
(NO. C11-0974 RSL)



Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

The defendants argue that Mr. Amini had reason to know LandSafe's appraisals were negligently prepared and contained false information before June 25, 2008 because he "had already viewed at least one other appraisal of the Property," referring again to the appraisal ordered by D & B Mortgage. Motion for Partial Summary Judgment at 13. As discussed above, however, Mr. Amini had no knowledge of that other appraisal and had nothing to do with procuring it. Amini Decl. at 7. The other appraisal could not have put Mr. Amini on alert that the LandSafe appraisals were false and not properly prepared.

Finally, the defendants argue that Mr. Amini should have discovered his negligent misrepresentation claims prior to three years before he filed this action because he "was not a stranger to real estate buying and selling." Motion for Partial Summary Judgment at 13. But Mr. Amini's experience in purchasing and selling real estate does not make him an expert or a professional in valuing real estate. Indeed, defendant's own expert, Mr. Hagar, claims that the property's value in August 2006, assuming it had a working septic system, was $600,000. What would have put Mr. Amini on notice that the appraisals upon which he relied were negligently performed and contained false information? At best, Mr. Amini's real estate experience presents an issue for the jury to evaluate in determining whether he should have known prior to June 25, 2008 that the LandSafe appraisals were faulty.[5] The Court should not dismiss the negligent misrepresentation claim for the reason that it was not timely filed.

**B.     Mr. Amini stated a claim for negligent misrepresentation for both the 2005 and 2006 appraisals.**

---

[5] Mr. Amini did not obtain a copy of the 2006 appraisal until June 2010. Amini Decl. at 9. He did not obtain a copy of the 2005 appraisal until May 22, 2012, in discovery in this case.  Beckett Decl. at 2. Until he received those appraisals, he had no way to evaluate in what respects the appraisals were improperly prepared.

OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 14
(NO. C11-0974 RSL)

Berry&Beckett
llp
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

In a footnote, the defendants assert that Mr. Amini has not asserted a claim for negligent misrepresentation pertaining to the February 24, 2005 appraisal. *See* Motion for Partial Summary Judgment at 7, n.4. However, in his Second Amended Complaint (Dkt. #37), Mr. Amini's Second Cause of Action is clearly titled, "Negligence Associated with Appraisals." In paragraph number 36 of the Second Amended Complaint, Mr. Amini alleged that the appraisers for both appraisers did not exercise reasonable care in completing the appraisals. He clearly made a claim to recover for LandSafe's negligence related to both appraisals.

It is true that Mr. Amini did not make a detailed listing of the problems with the 2005 appraisal in the Second Amended Complaint as he did for the 2006 appraisal. The reason for that is simple: as of the time the Second Amended Complaint was provided to defendants with a request for them to stipulate to its entry, the defendants had still not provided a copy of the 2005 appraisal. Beckett Decl. at 2.  After a copy was finally produced, Mr. Nogatch prepared his report with his discussion of the problems associated with it, which was provided to defendants on August 8, 2012. *Id.* at 2-3. Thus, the defendants have not suffered any prejudice related to the lack of specific allegations about the problems with the 2005 appraisal in the Second Amended Complaint. However, if the Court believes more specific allegations about the problems associated with the 2005 appraisal should be asserted, Mr. Amini will request leave to file his Third Amended Complaint to include those allegations.

**C.      The Court should not dismiss Mr. Amini's claims for violations of the FDCPA.**

BOA argues it is entitled to dismissal of Mr. Amini's FDCPA claim because it was never a "debt collector" under the FDCPA. BOA is incorrect.

OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 15
(NO. C11-0974 RSL)



Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

As discussed in detail in Mr. Amini's motion for partial summary judgment filed on December 6, 2012 (Dkt. #70), Mr. Amini is entitled to recover on his Fair Debt Collection Practices Act ("FDCPA") claim. BAC Home Loans Servicing, LP was the servicer of the two 2006 promissory notes prior to July 1, 2011. Second Amended Complaint (Dkt. #37) at ¶ 16; Answer to Second Amended Complaint (Dkt. #38) at ¶ 16. Bank of America, N.A. ("BOA") is the successor by merger to BAC Home Loans Servicing, LP.  Second Amended Complaint at ¶ 3; Answer to Second Amended Complaint at ¶ at 2. As its successor by merger, BOA is liable for BAC Home Loans Servicing, LP's FDCPA violations. *Payne v. Saberhagen Holdings, Inc.,* 147 Wn. App. 17, 26, 190 P.3d 102 (2008) (citations omitted).

Effective July 1, 2011, BAC Home Loans Servicing, LP transferred servicing for Mr. Amini's $504,000 and $30,000 loans to BOA.  Declaration of Farbod Amini in Support of Motion for Partial Summary Judgment (Dkt. #72) at 2 and Ex.'s A, B.  Mr. Amini received notice of the transfer on or about June 13, 2011 by written correspondence from BOA. *Id.* In that correspondence, BOA informed Mr. Amini that the owner of the $504,000 loan was Wells Fargo (BSALTA 2006-7), and that the owner of the $30,000 loan was E*Trade Bank. *Id.* On June 23, 2011, an "Assignment of Deed of Trust" was signed by a representative of Mortgage Electronic Registration Systems, Inc., stating that the beneficial interest under the deed of trust securing the $504,000 loan, and "the note(s) and obligations therein described" were being assigned to Citibank, N.A. as Trustee for the Holders of Bear Stearns Alt-A Trust 2006-7, Mortgage Pass-Through Certificates, Series 2006-7.  Declaration of Guy W. Beckett in Support of Motion for Partial Summary Judgment (Dkt. #71), Ex. J. This is the only document BOA claims to have memorializing the assignment of the $504,000 loan to Wells



1    Fargo (BSALTA 2006-7). *Id.* at 2 and Ex. K. BOA claims it has no documents that

2    memorialize the assignment of the $30,000 note to E*Trade Bank. *Id.*

3           Under the FDCPA, a "debt collector" includes a person collecting or attempting to

4    collect a debt owed to another if the creditor received the debt through assignment and the

5    debt was in default at the time it was assigned. 15 U.S.C. § 1692a(6)(F). Thus, if a plaintiff

6    can show that a mortgage loan servicer serviced the loan after the holder of the mortgage

7    loan obtained the note by assignment when it was in default, the loan servicer is a "debt

8    collector" under the FDCPA. *Frison v. Accredited Home Lenders, Inc.,* 2011 WL 1103468,

9    *5-6 (S.D. Cal. 2011).

10

11          In this case, the debts were incurred on August 9, 2006. Declaration of Farbod Amini

12   in Support of Motion for Partial Summary Judgment (Dkt. #72) at 2. The $504,000 note has

13   been in default since October 2008, and the $30,000 loan has been in default since December

14   2008. Defendants' Motion for Partial Summary Judgment at 3. Thus, when the notes were

15   assigned in June or July 1, 2011 to Citibank, N.A., and E*Trade Bank, they were in default.

16   Under the plain language of 15 U.S.C. § 1692a(6)(F), because BOA was the new servicer for

17   both loans after that time and was attempting to collect the debts due under the notes for new

18   owners of the debts, it was a "debt collector" for purposes of the FDCPA, and it is liable to

19   Mr. Amini for its violations of the Act.

20          For this reason, BOA's motion for summary judgment to dismiss Mr. Amini's

21   FDCPA claim should be denied, and Mr. Amini's motion for judgment on that claim should

22

23   be granted.

24

25

26

Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### III. CONCLUSION

The Court should deny the defendants' motion for partial summary judgment in its entirety. A proposed order is submitted with these opposition papers.

DATED THIS 7th day of January, 2013.

BERRY & BECKETT, PLLP


Guy W. Beckett, WSBA #14939
Attorneys for Plaintiff

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346