1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11
12
13

_____
                                                    )
FARBOD AMINI,                                       )
                                                    )      No. C11-0974RSL
                         Plaintiff,                 )
                                                    )
            v.                                      )
                                                    )      ORDER DENYING
BANK OF AMERICA CORPORATION,                        )      PLAINTIFF'S MOTION FOR
et al.,                                             )      SUMMARY JUDGMENT
                                                    )
                         Defendants.                )
_____ )

14
15
16
17
18
19
20
21
22
23
24
25
26

        This matter comes before the Court on "Plaintiff's Motion for Partial Summary

Judgment on RESPA and FDCPA Claims."  Dkt. # 70.  Summary judgment is appropriate when,

viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute

as to any material fact that would preclude the entry of judgment as a matter of law.  L.A.

Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012).  The party seeking

summary dismissal of the case "bears the initial responsibility of informing the district court of

the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying

those portions of the materials in the record that show the absence of a genuine issue of material

fact (Fed. R. Civ. P. 56(c)(1)).  Once the moving party has satisfied its burden, it is entitled to

summary judgment if the non-moving party fails to identify specific factual disputes that must be

resolved at trial.  Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1059 (9th Cir. 2012).

The mere existence of a scintilla of evidence in support of the non-moving party's position will

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

1  not preclude summary judgment, however, unless a reasonable jury viewing the evidence in the

2  light most favorable to the non-moving party could return a verdict in its favor.  U.S. v. Arango,

3  670 F.3d 988, 992 (9th Cir. 2012).

4         Having reviewed the memoranda, declarations, and exhibits submitted by the

5  parties and taking the evidence in the light most favorable to Bank of America, N.A., the Court

6  finds as follows:

7                                       **BACKGROUND**

8         In August 2006, plaintiff obtained two loans in the amounts of $504,000 and

9  $30,000 using real property located at 97 Utsalady Road, Camano Island, Washington, as

10  collateral.  By early 2009, plaintiff had stopped making payments on both loans because the

11  house was uninhabitable.  In the fall of 2010, plaintiff's attorney sent four letters requesting

12  copies of certain documents and categories of documents from the loan servicer, Bank of

13  America Home Loans Servicing, LP.  The first request for each loan identified Guy W. Beckett

14  as plaintiff's counsel and was accompanied by a signed document authorizing Bank of America

15  to release mortgage loan documents and payment information to counsel as requested in the

16  letters.  Decl. of Guy W. Beckett (Dkt. # 71), Ex. A and Ex. C.  Bank of America timely

17  responded to both letters, but declined to produce any documents because the signature on the

18  authorization "did not appear to match the signature on the original loan documents."  Decl. of

19  Guy W. Beckett (Dkt. # 71), Ex. B and Ex. D.  Bank of America stated that, in order to release

20  information regarding the loans, the borrower would have to provide "a signed and dated request

21  . . . ."  Id.  The third and fourth letters sent to the servicer were also signed by Mr. Beckett as

22  plaintiff's attorney, but did not include a copy of the authorization.  Decl. of Guy W. Beckett

23  (Dkt. # 71), Ex. E and Ex. G.  Bank of America acknowledged receipt of the letters, but again

24  declined to provide any documents until it received (a) "written authorization from your client

25  allowing Bank of America to release loan information to your office" or (b) "the borrower's

26

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -2-

1   signed and dated request . . . ."  Decl. of Guy W. Beckett (Dkt. # 71), Ex. F and Ex. H.

2           When the loans were issued in 2006, Countrywide Home Loans Servicing LP was

3   the servicer of both loans.  Plaintiff defaulted on his loans in November 2008 and January 2009.

4   Decl. of Alison Goldfarb (Dkt. # 77), Ex. B and Ex. C.[1]  In April 2009, Bank of America

5   acquired Countrywide Financial Corporation, and Countrywide Home Loans Servicing LP

6   changed its name to BAC Home Loans Servicing LP.  Decl. of Alison Goldfarb (Dkt. # 77) at

7   ¶ 11.  There is evidence in the record that ownership of plaintiff's home equity loan was

8   transferred to E*Trade Bank in January 2010 and that Mortgage Electronic Registration

9   Systems, Inc., transferred its ownership interests in the primary loan to Citibank, N.A. in June

10  2011.  BAC Home Loans retained its role as servicer despite these changes in ownership of the

11  underlying debt instrument.  In July 2011, however, BAC Home Loans merged into its parent

12  corporation, Bank of America, at which point Bank of America took over the servicing rights

13  and responsibilities for plaintiff's loans.  Both BAC Home Loans and Bank of America took

14  steps constituting "debt collection" under the Fair Debt Collection Practices Act in their attempts

15  to obtain repayment of the loans.

16                          **DISCUSSION**

17  **A.  Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)**

18           RESPA requires lenders and loan servicers to timely respond to Qualified Written

19  Requests ("QWRs") from borrowers.  At the time of the relevant communications, RESPA

20  required a lender or servicer to provide written acknowledgment within 20 days of receipt of a

21  QWR.  12 U.S.C. § 2605(e)(1)(A).[2]  Within 60 days after receiving a QWR, the servicer was

22

23      [1] Plaintiff entered into a loan modification agreement that had the effect of making the primary
    loan current between August 2009 and November 2009, when plaintiff again defaulted.

24
25      [2] The Dodd Frank Act, Pub. L. 111-203, Title XIV, § 1463(b) (July 21, 2010), shortened the
    time periods in which the lender had to respond.  Those amendments do not govern this case, however,
26  because they did not become effective until "18 months after the designated transfer date" of July 21,

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -3-

1  required to provide the borrower with a written response that included the information requested

2  by the borrower or an explanation of why the information is unavailable or cannot be obtained

3  by the servicer.  12 U.S.C. § 2605(e)(2)(C).  Plaintiff alleges that Bank of America violated

4  RESPA when it or its wholly-owned subsidiary, BAC Home Loans, refused to provide

5  information related to plaintiff's loans despite numerous QWRs.[3]

6      Bank of America argues that it complied with the requirements of RESPA when it

7  acknowledged receipt of plaintiff's correspondence and stated that it would not produce

8  responsive information because of confidentiality concerns.  Under RESPA, the servicer has two

9  choices when responding to a borrower's request for information regarding the servicing of his

10  loan:  to provide the information requested by the borrower or to provide "an explanation of why

11  the information requested is unavailable or cannot be obtained by the servicer."  12 U.S.C.

12  § 2605(e)(2)(C)(i).  Bank of America did not choose either of these options.  Instead, the

13  servicer declined to produce information that was readily available because it had concerns

14  regarding the authenticity of the borrower's signature and was therefore unsure whether the

15  borrower had authorized the QWR.  When plaintiff's counsel inquired as to the source or nature

16  of Bank of America's concern, it simply repeated its demand for "written authorization from

17  your client," making no effort to support the implied assertion of a forgery.  Decl. of Guy W.

18  Beckett (Dkt. # 71), Ex. F.  Even in this litigation, Bank of America has not yet attempted to

19  explain what was wrong with the authorization provided with the QWR or to support its forgery

20  hypothesis.

21      Bank of America argues that its failure to comply with the dictates of RESPA was

22  appropriate because it has an obligation to protect its customer's nonpublic information, citing

23

24  2011.  Id. at § 1400(c); Designated Transfer Date, 75 Fed. Reg. 57,252 (Sept. 20, 2010).

25      [3]  The Court has already determined that the letters from plaintiff's counsel were QWRs as that
term is defined in the statute.  Dkt. # 30 at 5-7.

26

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -4-

1   the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and Fannie Mae's Single Family

2   Servicing Guide.  Both the Act and the Servicing Guide authorize disclosures to third parties

3   when requested or authorized by the customer, however.  15 U.S.C. § 6802(e)(2); Fannie Mae

4   Single Family 2012 Servicing Guide, Part I, § 309.[4]  In addition, the Gramm-Leach-Bliley Act

5   does not apply to the disclosure of nonpublic personal information "to comply with Federal,

6   State, or local laws . . . ," such as RESPA.  15 U.S.C. § 6802(e)(8).  The Court finds, however,

7   that where there is reason to suspect that a QWR did not come from the borrower or his agent,

8   the servicer may take reasonable steps to confirm the identity of the requester before producing

9   responsive information.[5]  The questions, then, are whether Bank of America had reason to

10  suspect a forgery and whether its responses to the QWRs were adequate in the circumstances of

11  this case.

12          There is very little in the record to support Bank of America's forgery hypothesis,

14      [4]  The 2012 Servicing Guide was not in effect when plaintiff sent his QWRs.  The 2006
15  Servicing Guide, as amended, governed Bank of America's response.  Part 1, § 309 of the 2006
    Servicing Guide has nothing to do with privacy or confidentiality, however, making defendant's reliance
16  on the Servicing Guides suspect.

17      [5]  Plaintiff relies on <u>Moon v. GMAC Mortgage Corp.</u>, C08-0969TSZ, 2009 WL 3185596, for the
18  proposition that a QWR need not be signed by the borrower.  RESPA describes a QWR as "written
    correspondence, other than notice on a payment coupon or other payment medium supplied by the
19  servicer, that –

20      (i)  includes, or otherwise enables the servicer to identify, the name and account of the borrower;
        and
21      (ii)  includes a statement of the reasons for the belief of the borrower, to the extent applicable,
        that the account is in error or provides sufficient detail to the servicer regarding other
22      information sought by the borrower."

24  12 U.S.C. § 2605(e)(1)(B).  The obligations imposed by RESPA are triggered by a request for
    information "from the borrower (or an agent of the borrower)," however. 12 U.S.C. § 2605(e)(1)(A).
25  Where there is a legitimate concern that the borrower has not authorized the inquiry, the servicer may
    take reasonable steps to confirm the identity of the requester and/or his relationship to the borrower.
26

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT            -5-

and defendant has thus far made no effort to explain or support its accusation.  Even if the Court assumes that Bank of America had a legitimate concern regarding Mr. Beckett's motives and authorizations, the jury could be justified in finding that Bank of America's blank refusal to produce the requested information unless plaintiff's counsel provided yet another signed authorization for release was unreasonable.  If Bank of America were actually concerned about the possibility of fraud rather than simply attempting to avoid its disclosure obligations, it had numerous options available to it, including contacting Mr. Amini directly  and investigating the bona fides of Mr. Beckett and his law firm.  Because the reasonableness of Bank of America's purported concern and responses to the QWRs is an issue of fact, the Court finds that summary judgment is inappropriate.  The jury will also be asked to determine whether Bank of America's refusal to respond to four QWRs constitutes a "pattern or practice of noncompliance" for purposes of a statutory damage award.  12 U.S.C. § 2605(f)(1).

**B.  Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.**

Plaintiff seeks summary judgment on his FDCPA claim regarding debt collection activities following the transfer of ownership of his loans to E*Trade and Citibank.  Plaintiff's theory is that, despite the fact that BAC Home Loans arguably serviced the loans throughout the relevant time period, the transfer of ownership of the loans converted BAC Home Loans from a mere servicer into a "debt collector" as that term is defined in the FDCPA.

The term "debt collector" is defined in the FDCPA as  "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  This definition easily encompasses the standard operations of mortgage and other loan servicers who request and process payments on debts owed to third parties.  However, Congress specifically excluded from the definition of "debt collector" certain persons who are otherwise engaged in the collection of

1   debts for a third party.

2   > The term [debt collector] does not include – . . . . (F)  any person collecting or
3   > attempting to collect any debt owed or due or asserted to be owed or due to another
    > to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a
4   > bona fide escrow arrangement; (ii) concerns a debt which was originated by such
    > person; (iii) concerns a debt which was not in default at the time it was obtained by
5   > such person; or (iv) concerns a debt obtained by such person as a secured party in a
6   > commercial credit transaction involving the creditor.

7   15 U.S.C. § 1692a(6)  Plaintiff argues that the phrase "such person" in § 1692a(6)(F)(iii) should

8   be interpreted as a person other than the purported debt collector, namely the owner of the debt.

9   Under this interpretation, a servicer becomes a debt collector if, as occurred in this case, the

10  owner of the debt changes after the loan has gone into default, even if the servicer remains

11  unchanged.

12  Neither the language of the statute nor its purpose support such an interpretation.

13  Section 1692a(6)(F) refers to the owner of the debt in two ways:  as "another" and as "the

14  creditor."  In contrast, the phrase "such person" refers back to the primary actor of the section,

15  namely the "person collecting or attempting to collect any debt owed or due" another.  If "such

16  person" were interpreted to mean the owner of the debt, subsection (ii) would effectively give

17  third-party debt collectors carte blanche to use whatever tactics they choose to collect a debt as

18  long as they were acting on behalf of the original creditor.  Such an expansive exclusion would

19  thwart the purpose of the statute, which was to reign in the egregious collection practices of

20  independent debt collectors (S. REP No. 95-382, at 2) who had no on-going relationship with the

21  debtor that could provide incentive to treat the debtor, even in collection, with respect and

22  honesty (Ruth v. Triumph Partnerships, 577 F.3d 790, 797 (7th Cir. 2009)).  Plaintiff's

23  interpretation of "such person" as that phrase is used in subsection (iii) would also have absurd

24  results.  A mortgage or student loan servicer would suddenly be subject to the FDCPA, despite

25  its on-going and unchanging relationship with the debtor, simply because ownership of the

26  ORDER DENYING PLAINTIFF'S
    MOTION FOR SUMMARY JUDGMENT            -7-

1  underlying debt changed hands. At the same time, a new servicer who takes over responsibility

2  for servicing after the loan is in default would be free of the FDCPA as long as the debt owner

3  remained the same.  This is clearly not what Congress intended and is inconsistent with the many

4  cases that find a mortgage servicer to be a "debt collector" if the debt was in default when it took

5  over the servicing obligations.  See, e.g., Frison v. Accredited Home Lenders, Inc., No. 10-CV-

6  777-JM, 2011 WL 1103468 (S.D. Cal. Mar. 25, 2011).

7          The legislative history of the FDCPA also shows that plaintiff's interpretation of

8  "such person" is incorrect.  Recognizing that the broad definition of "debt collector" would

9  impose the FDCPA's strictures on those who service outstanding debts for others (including

10  mortgage and student loan servicers), Congress specifically excluded from the definition persons

11  engaged in certain banking-related activities.  The Senate Committee on Banking, Housing, and

12  Urban Affairs stated:

13          the committed does not intend the definition [of debt collector] to cover the
             activities of trust departments, escrow companies, or other bona fide fiduciaries;
14          the collection of debts, such as mortgages and student loans, by persons who
             originated such loans; mortgage service companies and others who service
15          outstanding debts for others, so long as the debts were not in default when taken
             for servicing; and the collection of debts owed to a creditor when the collector is
16          holding the receivable account as collateral for commercial credit extended to the
             creditor.
17

18

19  S. REP No. 95-382, at 3-4 (1977).  Thus, the difference between loan servicers who are not

20  subject to the FDCPA and those who are is whether the debt that is being collected was already

21  in default when taken for servicing.  Whether ownership of the debt itself transferred after

22  default is irrelevant to the obligations of the servicer.  Assuming, as plaintiff does for purposes

23  of this motion, that BAC Home Loans was the servicer prior to plaintiff defaulting on his loans,

24  the Court finds that it did not become a "debt collector" under the FDCPA simply because

25  ownership of the notes were transferred while it was servicing the loans.

26

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -8-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CONCLUSION**

For all of the foregoing reasons, plaintiff's motion for summary judgment on his RESPA and FDCPA claims (Dkt. # 70) is DENIED.

Dated this 6th day of May, 2013.

*MM S Lasnik*

Robert S. Lasnik
United States District Judge

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -9-