1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                        )
FARBOD AMINI,                           )
                                        )        No. C11-0974RSL
                      Plaintiff,        )
                                        )
        v.                              )
                                        )        ORDER GRANTING
BANK OF AMERICA CORPORATION,            )        DEFENDANTS' MOTION FOR
*et al.*,                               )        SUMMARY JUDGMENT
                                        )
                      Defendants.       )
_____)

        This matter comes before the Court on "Defendants Bank of America, N.A. and

LandSafe Appraisal Services, Inc.'s Partial Motion for Summary Judgment."  Dkt. # 78.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the

nonmoving party, there is no genuine dispute as to any material fact that would preclude the

entry of judgment as a matter of law.  L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d

841, 846 (9th Cir. 2012).  The party seeking summary dismissal of the case "bears the initial

responsibility of informing the district court of the basis for its motion" (Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of the materials in the record

that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)(1)).  Once the

moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party

fails to identify specific factual disputes that must be resolved at trial.  Hexcel Corp. v. Ineos

Polymers, Inc., 681 F.3d 1055, 1059 (9th Cir. 2012).  The mere existence of a scintilla of

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

evidence in support of the non-moving party's position will not preclude summary judgment, however, unless a reasonable jury viewing the evidence in the light most favorable to the non-moving party could return a verdict in its favor. U.S. v. Arango, 670 F.3d 988, 992 (9th Cir. 2012).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, having heard the arguments of counsel, and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

### BACKGROUND

In March 2005, third-party Kazem Noven, acting on plaintiff's behalf, borrowed money from Countrywide Bank, N.A., to purchase real property located at 97 Utsalady Road, Camano Island, WA.  Countrywide had its subsidiary, defendant LandSafe Appraisal Services, Inc., perform an appraisal of the real property to determine whether the property provided adequate collateral for the purchase loan.  Although plaintiff never saw the appraisal, he knew that one had been obtained by Countrywide and correctly surmised that LandSafe had valued the property at or near the purchase price of $525,000.

In August 2006, plaintiff obtained a loan in his own name from Countrywide and acquired full title to the property from Mr. Noven.  Because the real property was once again offered as collateral for the loan, Countrywide retained LandSafe to perform another appraisal. At the time of closing, plaintiff was aware that the appraised amount was at least sufficient to cover the value of his $504,000 primary loan plus the $30,000 line of credit he also obtained from Countrywide.

When plaintiff had the septic system at 97 Utsalady Road serviced in mid-2008, he was notified that the waste disposal system was not operable and had not been operable since before 2005.  While investigating possible remedies for the waste disposal problems, plaintiff also discovered that the foundation of the house had been compromised by the inoperable

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -2-

system.  Plaintiff communicated frequently with Countrywide and its successor, Bank of America,[1] regarding the problems on the site and potential repair options.  With repair costs estimated in the hundreds of thousands of dollars and in the absence of insurance coverage, plaintiff determined that the real property was essentially worthless and stopped making payments on the primary loan in November 2008 and on the line of credit in January 2009.[2]  On April 8, 2010, the Island County Department of Public Health barred occupancy or use of the property for any purpose until an approved waste disposal system is installed.  Plaintiff obtained copies of the 2005 and 2006 appraisal reports created by LandSafe on or about May 22, 2012, and June 30, 2010, respectively.  The 2005 appraised value was $525,000 and the 2006 appraised value was $630,000.

When the loans were first issued in 2006, Countrywide Home Loans Servicing LP was the servicer of both loans.  In April 2009, while both loans were in default, Bank of America acquired Countrywide Financial Corporation, at which point Countrywide Home Loans Servicing LP changed its name to BAC Home Loans Servicing LP.  Decl. of Alison Goldfarb (Dkt. # 77) at ¶ 11.  BAC Home Loans retained its role as servicer despite changes in ownership of the underlying debt instrument.  In July 2011, however, BAC Home Loans merged into its parent corporation, Bank of America, at which point Bank of America took over the servicing rights and responsibilities for plaintiff's loans.  Both BAC Home Loans and Bank of America took steps constituting "debt collection" under the Fair Debt Collection Practices Act in their attempts to obtain repayment of the loans.

---

[1]  Countrywide merged with Bank of America on April 27, 2009.

[2]  Plaintiff entered into a loan modification agreement that had the effect of making the primary loan current between August 2009 and November 2009, when plaintiff again defaulted.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -3-

**DISCUSSION**

**A. Negligence**

In the Second Amended Complaint, plaintiff alleges that "[a]n appraiser exercising the proper standard of care would have determined whether the real property [were] operating and had an approved waste disposal system" and "whether the foundation for the house on the real property [were] in good repair." Dkt. # 35-2 at ¶ 36. In addition, plaintiff alleges that LandSafe negligently overstated the square footage of the home and negligently utilized comparables in its analysis. Dkt. # 35-2 at ¶ 37 and ¶ 38. Plaintiff asserts that LandSafe's negligence resulted in an appraisal that overstated the true value of the property as of August 2006, that he relied on the faulty appraisal, and that he was damaged in the amount of the closing costs and loan payments. Decl. of Farbod Amini (Dkt. # 85) at ¶ 9; Dkt. # 35-2 at ¶ 40.

In Washington, "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Schaaf v. Highfield, 127 Wn.2d 17, 22 (1995) (quoting Restatement (Second) of Torts § 552). While it is clear that an appraiser can be liable to third party purchasers under § 552, the Court finds that plaintiff cannot, as a matter of law, satisfy all of the elements of his negligence claim in this case.

With regard to the problems with the waste disposal system and the foundation, plaintiff cannot show that LandSafe failed to exercise reasonable care or competence. Appraisers are not home inspectors: they are entitled to rely on a presumption that basic systems are in working order, at least in the absence of actual knowledge of a defect. Plaintiff's expert specifically acknowledges that LandSafe had no duty to discover that the septic system and/or

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -4-

1   foundation were compromised when it conducted the appraisal in 2006.  Decl. of George N.

2   Nogatch (Dkt. # 87) at ¶ 5.  In the absence of a duty, defendants cannot be held liable for any

3   damages arising from the failure to discover these significant defects.

4           The Court will assume, for purposes of this motion, that LandSafe was negligent

5   when it calculated the home's square footage and that it improperly used comparables in the

6   appraisal process.  Nevertheless, there is no evidence in the record from which the jury could

7   conclude that plaintiff justifiably relied on those misrepresentations or that he was damaged

8   thereby.  Plaintiff was unaware of the square footage and comparable analyses at the time he

9   took ownership of the property and does not claim that he relied on those specific

10  representations.  Rather, plaintiff asserts that he relied on the accuracy of the appraised value.

11  Plaintiff did not, however, know that LandSafe had appraised the property at $630,000 until long

12  after he had refinanced.  At most, plaintiff relied on an inferred assertion that the property was

13  worth the amount that Countrywide was willing to lend him – $534,000.  Based on the existing

14  record, a reasonable jury would have no basis for concluding that such an inferred representation

15  was false.  Defendants' expert has opined that the property should have been appraised at

16  $600,000 in August 2006 (relying only on information that LandSafe knew or should have

17  discovered at the time), while plaintiff's expert has opined that LandSafe's errors "are

18  responsible for a concluded value that was at least 15% higher" that it should have been.

19  Reducing LandSafe's appraised value by 15% would bring it to $535,500, which is almost

20  exactly what plaintiff understood LandSafe's representation to be in the first place.  While

21  plaintiff's expert contemplates the possibility that LandSafe's appraisal may have been

22  overstated by more than 15%, he does not provide any opinion to that effect, and the jury will

23  not be permitted to speculate regarding the impact of the square footage and comparable errors

24  on the appraised value.

25          Despite the obvious deficiencies in plaintiff's negligence claim, plaintiff takes a

26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -5-

holistic approach, arguing that he had a right to expect, and LandSafe had a duty to provide, an accurate appraisal.  Everyone agrees that the 2006 appraisal was flat-out wrong:  in the absence of a working waste disposal system and sound foundation and in light of the local zoning and permitting limitations, the property was not worth $630,000.  As discussed above, however, the fact that an appraisal turns out to be erroneous does not necessarily mean that the appraiser was negligent and/or that liability will attach.  Plaintiff must establish all of the elements set forth in the Restatement (Second) of Torts § 552, including failure to exercise reasonable care, reliance, and damages.  There is no indication that the appraiser knew of the septic system and foundation defects or that it had any duty to discover them as part of the appraisal.  To the extent LandSafe failed to exercise reasonable care (*i.e.*, by negligently calculating square footage and utilizing comparables), plaintiff cannot establish reliance and/or pecuniary loss.  His negligence claim therefore fails as a matter of law.

Defendants' statute of limitations argument is unpersuasive.  A claim of negligent misrepresentation is subject to the discovery rule:  the statute of limitations begins to run when plaintiff "discovered or, in the exercise of due diligence, should have discovered the misrepresentation."  Sabey v. Howard Johnson & Co., 101 Wn. App. 575, 592-93 (2000).  Plaintiff has presented evidence that he first learned that LandSafe had significantly overstated the value of his house when he had the waste disposal system serviced in 2008 and discovered the septic and foundation problems.  There is no indication that plaintiff had any reason to suspect that the appraisal was negligently conducted, nor did he have a duty to double-check the work and conclusions of a professional hired to provide services.  For all of the reasons discussed in this Court's "Order Granting in Part Defendants' Motion to Dismiss" (Dkt. # 30) at 11-13, the Court finds that the statute of limitations on plaintiff's negligence claim did not begin to run until June 2008 when plaintiff had a reason to suspect that LandSafe's appraisal was faulty and that further investigation was necessary.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -6-

1  **B.  Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.**

2              Defendants seek summary judgment on plaintiff's FDCPA claim on the grounds

3  that a name change and a change in servicer arising from a corporate merger do not convey "debt

4  collector" status under the statute.  The term "debt collector" is defined in the FDCPA as  "any

5  person who uses any instrumentality of interstate commerce or the mails in any business the

6  principal purpose of which is the collection of any debts, or who regularly collects or attempts to

7  collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  This

8  definition easily encompasses the standard operations of mortgage and other loan servicers who

9  request and process payments on debts owed to third parties.  However, Congress specifically

10  excluded from the definition of "debt collector" certain persons who are otherwise engaged in

11  the collection of debts for a third party.

12          The term [debt collector] does not include – . . . . (F)  any person collecting or
13          attempting to collect any debt owed or due or asserted to be owed or due to another
            to the extent such activity . . . (iii) concerns a debt which was not in default at the
14          time it was obtained by such person . . . .

15  15 U.S.C. § 1692a(6).  Thus, the dividing line between loan servicers who are not subject to the

16  FDCPA and those who are is whether the debt that is being collected was already in default

17  when taken for servicing.  S. REP No. 95-382, at 3-4 (1977).  <u>See also</u> <u>Schlosser v. Fairbanks

18  Capital Corp.</u>, 323 F.3d 534, 536 (7th Cir. 2003).  Congress was, after all, attempting to reign in

19  the egregious collection practices of independent debt collectors who had no on-going

20  relationship with the debtor that could provide incentive to treat the debtor, even in collection,

21  with respect and honesty.  S. REP No. 95-382, at 2; <u>Ruth v. Triumph Partnerships,</u> 577 F.3d 790,

22  797 (7th Cir. 2009).  Servicers whose first contact with the debtor arose after the debt was

23  already in default fall squarely within the group whose behavior Congress was interested in

24  regulating when it passed the FDCPA.

25              In April 2009, while both loans were in default, Bank of America acquired

26
ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -7-

1  Countrywide Financial Corporation.  Countrywide Home Loans Servicing LP, the servicer of

2  plaintiff's loans, then changed its name to BAC Home Loans Servicing LP.  Despite the merger

3  of the parent corporations and the subsequent renaming of the subsidiary, plaintiff's loan

4  servicer remained unchanged.  The exclusion to the definition of "debt collector" set forth in 15

5  U.S.C. § 1692a(6)(F) continued to apply after the name change, meaning that BAC Home Loans

6  was not subject to the FDCPA.

7          In July 2011, BAC Home Loans merged into its parent corporation, Bank of

8  America.  BAC Home Loans ceased to exist, and, although no separate assignment of plaintiff's

9  loans occurred, Bank of America took over the servicing rights and responsibilities for plaintiff's

10  loans.  Bank of America argues that, as the successor to BAC Home Loans' assets and liabilities

11  through merger, it simply stepped into BAC Home Loan's shoes and should not be considered a

12  new servicer for purposes of § 1692a(6)(F).  See Brown v. Morris, No. 04-60526, 2007 WL

13  1879392 (5th Cir. 2007).  On the other hand, one could argue that there is no statutory basis for

14  distinguishing between servicing rights that are obtained through merger and those that are

15  obtained through some other form of transfer or assignment.  See McAdams v Citifinancial

16  Mortg. Co., Inc. of N.Y., No. A.06 27 A., 2007 WL 141128, at *7 (M.D. La. Jan. 16, 2007).

17  This is a very close question which the Court must decide as a matter of law.

18          After reviewing the legislative history and the structure of the statute, the Court

19  finds that Congress' concerns regarding the activities of third-party debt collectors who had no

20  pre-existing relationship with the debtor are not triggered by a merger in which all of the assets

21  and liabilities of the merging company are subsumed within the surviving company.  Unlike the

22  third-party debt collectors who make a business of acquiring and collecting on delinquent debts,

23  Bank of America did not act for the purpose of obtaining a defaulted debt for servicing.  Rather,

24  Bank of America absorbed an entire company lock, stock, and barrel, a transaction which

25  happened to include a transfer of ownership of certain defaulted debts.  RCW 25.15.410(1)(b)

26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -8-

1   and (c).  The legal effect of the merger was to place Bank of America in the shoes of BAC Home

2   Loans with regards to the merging company's relationships with third parties.  See PNC Bank

3   Nat'l Ass'n v. Prime Lending, Inc., C10-0034EFS, 2013 WL 943564, at *5-6 (E.D. Wash. Mar.

4   11, 2013); Minton v. Ralston Purina Co., 146 Wn.2d 385, 390-94 (2002).  As a factual matter,

5   the surviving company also inherited many of the merging companies' employees, customer

6   service records, files, etc.  Thus, as a matter of law and of fact, the surviving company should

7   not be considered a "new" servicer for purposes of the FDCPA.  Bank of America does not,

8   therefore, fall within the definition of "debt collector" as set forth in § 1692a(6)(F).

9                                         **CONCLUSION**

10          For all of the foregoing reasons, defendants' motion for summary judgment (Dkt.

11   # 78-1) is GRANTED.  Plaintiff's negligence and FDCPA claims are DISMISSED.

12

13          Dated this 5th day of June, 2013.

14

15          Robert S. Lasnik
            United States District Judge

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -9-